The appellant attended a fireworks display sponsored in part by the City of Mobile at Ladd Memorial Stadium on July 3, 1982. After he arrived and as he was walking up the stadium ramp to find a seat, he was assaulted by a group of five or six teenage males. He was stabbed a number of times. Eighty-two police officers were assigned to Ladd Stadium for the fireworks display.
The appellant brought suit against the City of Mobile, alleging that the City:
 (a) "negligently failed to provide adequate security and/or protection for plaintiff and for members of the general public similarly situated;"
 (b) "wantonly failed to provide adequate security and/or protection for plaintiff and for members of the general public similarly situated;"
 (c) "knew or should have known that the premises were not safe for use by plaintiff and by members of the general public similarly situated . . . [and] nevertheless, negligently failed to warn plaintiff and other persons similarly situated of the dangers existing at said time and place;"
 (d) "knew or should have known that the premises were not safe for use by plaintiff and by members of the general public similarly situated . . . [and] nevertheless, wantonly failed to warn plaintiff and other persons similarly situated of the dangers existing at said time and place."
The trial court granted the City's motion for summary judgment, and this appeal followed. We affirm.
In Rich v. City of Mobile, 410 So.2d 385, 387 (Ala. 1982), the Court held that public policy considerations prevent the imposition of a duty on a city, the breach of which would impose tort liability to a person "in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services." The opinion acknowledged the lack of clarity of the rule there expressed, reserving for a later day the development of the rule, characterized as the substantive immunity rule. Whatever its perimeters, the rule recognizes that a city's obligation to provide for the public health, safety, and general welfare of its citizens is paramount and that the imposition of liability to particular individuals in certain circumstances would necessarily threaten the benefits of certain services to the public at large. We hold that this is such a case.
Other jurisdictions have held that a municipality is not liable for this failure to provide police protection. See:Wuethrich v. Delia, 155 N.J. Super. 324, 326, 382 A.2d 929, 930
(1978), holding that "a public entity such as a municipality is not liable in tort for its failure to protect against the criminal propensity of third persons"; Motyka v. City ofAmsterdam, 15 N.Y.2d 134, 138, 256 N.Y.S.2d 595, 596,204 N.E.2d 635, 636 (1965), stating, "The rule is that, independent of sovereign immunity, a municipality is not liable for failure to supply general police . . . protection [to the public]." See also 18 McQuillin The Law of Municipal Corporations § 53.51 (3d ed. 1984), stating, "[T]he failure to provide, or the inadequacy of, police protection usually does not give rise to a cause of action in tort against a city." *Page 562 
The thrust of the appellant's claim is that the City was negligent in making its decision to deploy only eighty-two police officers to Ladd Stadium on the occasion of his injury. Liability cannot be predicated on this basis. Riss v. City ofNew York, 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860
(1968), dealt with a claim of negligence in refusing to furnish police protection to the plaintiff upon request. The court affirmed the dismissal of her complaint, saying:
 "[T]his case involves the provision of a governmental service to protect the public generally from external hazards and particularly to control the activities of criminal wrongdoers. . . . The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection based on specific hazards, could and would inevitably determine how the limited police resources of the community should be allocated and without predictable limits. . . .
". . . .
 ". . . To be sure these are grave problems at the present time, exciting high priority activity on the part of the national, State and local governments, to which the answers are neither simple, known, or presently within reasonable controls. To foist a presumed cure for these problems by judicial innovation of a new kind of liability in tort would be foolhardy indeed and an assumption of judicial wisdom and power not possessed by the courts.
". . . .
 "For all of these reasons, there is no warrant in judicial tradition or in the proper allocation of the powers of government for the courts, in the absence of legislation, to carve out an area of tort liability for police protection to members of the public."
22 N.Y.2d at 582-83, 293 N.Y.S.2d 897-898, 240 N.E.2d at 860-61.
As we noted in Berdeaux v. City National Bank of Birmingham,424 So.2d 594, 595 (Ala. 1982):
 "Not all problems of a complex society can be solved in civil litigation and, while courts do not and should not shrink from performing their constitutional duty, they do and should leave to the executive and legislative branches matters requiring resolution in the body politic."
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.