514 So.2d 1275 (1987)
Elizabeth F. ZIEGLER
v.
CITY OF MILLBROOK.
85-1461.
Supreme Court of Alabama.
August 28, 1987.
Rehearing Denied October 2, 1987.
Stephen M. Langham, Prattville, for appellant.
Philip S. Gidiere, Jr., of Carpenter & Gidiere, Montgomery, for appellee.
BEATTY, Justice.
The plaintiff, Elizabeth Ziegler, appeals from a summary judgment granted in favor of the defendant, City of Millbrook, in her action to recover damages for negligently or wantonly failing to provide fire protection. We reverse and remand.
The sole issue presented in this case is whether a municipality, under the doctrine of substantive immunity, is liable for negligence in failing to provide fire protection.[1]
In Williams v. City of Tuscumbia, 426 So.2d 824 (Ala.1983), this Court reversed a summary judgment granted in favor of the defendant, City of Tuscumbia. In that case the plaintiff filed suit against the city, seeking to recover damages for its fire department's negligence in failing to immediately respond to a fire at his residence. The Court stated:
"The issue for decision is whether the City of Tuscumbia is liable for its firemen not responding immediately to a call from a citizen telling them that his house is on fire.
"Tuscumbia contends that there is no legislative duty imposed upon a municipality to maintain a fire department. That is true. Section 11-43-140, Code 1975, provides that:
"`Cities and towns may maintain and operate a volunteer or paid fire department and may do all things necessary to secure efficient service....'
"The flip side proposes this question. Once a city or town organizes and provides for a fire department, what is the duty owed to the citizens of the city or town? Tuscumbia contends that a duty imposed upon a municipal fire department is owed to the general publicnot to an individual. Does this mean that the whole town has to be on fire before the fire department responds to a call? It may be true that a certain fire in the city would have priority over another fire. For example, if a multi-story building *1276 was on fire and in it a number of people were stranded and about to suffer imminent death from the fire, it could hardly be questioned that the fire inside the multi-story building would have priority over a fire in a dwelling where only property damage would be suffered.
"We opine that in this case a duty was imposed on the Tuscumbia Fire Department to respond immediately to the call that the Williams house was on fire. There was a special duty created to act in a skillful manner to respond to the call. We recognize the fact that firemen may act with extreme skillfulness and yet be unable to get to a fire to prevent a building from burning to the ground. But, here the complaint alleges that the reason the fire department did not immediately respond was that the driver of the truck had gone home sick and had not been replaced. We opine that the fire department acted unskillfully by not having a back-up driver who could have immediately taken the place of the sick driver, § 11-47-190, Code 1975. In other words, the fire department lacked proficiency. Cf. City of Birmingham v. Thompson, 404 So.2d 589 (Ala.1981).
"Finally, Tuscumbia contends that the abrogation of immunity by Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), did not relieve the courts from further examination of the issue of liability. No one can argue with that contention. Before Jackson the liability question was never presented for decision (except in a proprietary action), because the municipality was shielded by the doctrine of immunity. The municipality's immunity having been abrogated by § 11-47-190 as interpreted by Jackson, the liability question is precisely the question in this case.
"We hold that the complaint stated a cause of action. The cause is returned to the trial court to determine whether the failure of the fire department to immediately respond to the call that there was a fire at the Williams residence was the proximate cause of the house being destroyed." (Emphasis added.) 426 So.2d at 825-26.
In City of Mobile v. Jackson, 474 So.2d 644, 649 (Ala.1985), this Court refused to adopt the municipality's argument for substantive immunity:
"Next, the city cites Rich v. City of Mobile, 410 So.2d 385 (Ala.1982), to support its proposition that it is substantively immune from suit in this case. In Rich, homeowners sued the city, alleging that a building inspector negligently inspected, or negligently failed to inspect, sewer lines connecting plaintiffs' residence to the main system. Rich created a narrow exception to the rule of general liability for municipalities in situations in which the public policy considerations of a city's paramount responsibility to provide for the public safety, health, and general welfare outweighed the reasons for the imposition of liability on the municipality. This exception to the general rule of liability, however, is to be applied only in `those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.' Rich, 410 So.2d at 387.
"We find that Rich is not applicable to the case at hand.
"In Kennedy v. City of Montgomery, 423 So.2d 187 (Ala.1982), this Court held that pursuant to Code 1975, § 11-50-50, municipalities are authorized to construct and maintain drainage systems, and, while a municipality is not required to exercise this authority, once it does so, a duty of care arises and a municipality may be liable for damages proximately caused by its negligence.

"We find that the liability for negligent design or maintenance of drainage systems is analogous to that involved in the construction and maintenance of streets, alleys, or public ways or buildings, and, thus, that the city is not immune in this case." (Emphasis added.)
We find this case to be controlled by Williams v. Tuscumbia, supra, and it follows that no municipal immunity exists under the circumstances of this claim. Accordingly, *1277 the summary judgment is reversed, and this cause is remanded for further proceedings. It is so ordered.
REVERSED AND REMANDED.
JONES, ALMON, SHORES and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX, HOUSTON and STEAGALL, JJ., dissent.
HOUSTON, Justice (dissenting).
I respectfully dissent.
The Court first addressed the doctrine of substantive immunity in Rich v. City of Mobile, 410 So.2d 385 (Ala.1982). In that case the plaintiffs' residence was connected to and served by the sewer system of the City of Mobile. The elevation of the residence was lower than that of the sewer system; and, because an overflow trap had not been installed in the line leading to the residence, a sewer line back-up overflowed into the plaintiffs' home. The plaintiffs filed suit against the City of Mobile, seeking damages for negligently failing to inspect or negligently inspecting the sewer lines connecting the plaintiffs' residence to the main system. The trial court dismissed the case. We affirmed, stating:
"There is, indeed, a sense in which the duty of the City's employees, as inspectors, is a duty flowing to the individual homeowners. But to stop here and impose liability is to overlook what we perceive as overriding public policy reasons to hold to the contrary.
"These policy considerations may be expressed in terms of the broader requirement of the City to provide for the public health, safety, and general welfare of the citizenry. While, as here, the individual homeowner is affected by the discharge of the City sewer inspector's duty, the City's larger obligation to the whole of its resident population is paramount; and the imposition of liability upon the City, particularly where the Plaintiffs' reliance upon the public inspection is secondary and inferential to their reliance upon the building contractor, necessarily threatens the benefits of such services to the public-at-large.
"A municipality, in contrast to the State, which has immunity under Ala. Const. 1901, § 14, is generally chargeable with the negligence of its employees acting within the line and scope of their employment. In Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), we interpreted § 11-47-190, Code 1975, as so mandating. We believe these public policy considerations, however, override the general rule and prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.

"We readily acknowledge both the difficulty and the risk of error of any attempt to articulate the rule with that degree of definiteness which is easily applicable to varying factual situations. But this phenomenon is no stranger to the Rule of Law generally. We believe the wiser course is to allow the rule to evolve through the judicial process of trial and review on a case by case basis.
"We emphasize, however, that only the narrowest of constructions of our instant holding will avoid violence to § 11-47-190 and its Jackson interpretation; and that the substantive immunity rule of this case must be given operative effect only in the context of those public service activities of governmental entities (not to be confused with the pre-Jackson distinction between governmental and proprietary functions) so laden with the public interest as to outweigh the incidental duty to individual citizens. Cf. DeStafney v. University of Alabama, 409 So.2d 1347 [Republished at 413 So.2d 391] (Ala.1982). For two recent pronouncements of this Court that further illustrate the circumscription of the rule, see, also, City of Birmingham v. Thompson, 404 So.2d 589 (Ala.1981) (allowing a claim for assault and battery); *1278 and Neighbors v. City of Birmingham, 384 So.2d 113 (Ala.1980) (rejecting a claim for malicious prosecution).
". . .
"Cognizant of the Restatement's [Restatement (Second) of Torts] review of the historical development of municipal immunity, and the modern trend of the common law to liberalize its exceptions (Comment, § 895C), which we accept generally, we nonetheless reject the Restatement `s approval of a claim against the City under the facts of the instant case." (Emphasis added; footnote omitted.)
410 So.2d at 386-88.
Approximately a year after Rich, this Court, in Williams v. City of Tuscumbia, 426 So.2d 824 (Ala.1983), reversed a summary judgment granted in favor of the defendant, City of Tuscumbia. In that case the plaintiff filed suit against the city to recover damages for its fire department's negligence in failing to immediately respond to a fire at his residence. The Court stated:
"The issue for decision is whether the City of Tuscumbia is liable for its firemen not responding immediately to a call from a citizen telling them that his house is on fire.
"Tuscumbia contends that there is no legislative duty imposed upon a municipality to maintain a fire department. That is true. Section 11-43-140, Code 1975, provides that:
"`Cities and towns may maintain and operate a volunteer or paid fire department and may do all things necessary to secure efficient service....'
"The flip side proposes this question. Once a city or town organizes and provides for a fire department, what is the duty owed to the citizens of the city or town? Tuscumbia contends that a duty imposed upon a municipal fire department is owed to the general publicnot to an individual. Does this mean that the whole town has to be on fire before the fire department responds to a call? It may be true that a certain fire in the city would have priority over another fire. For example, if a multi-story building was on fire and in it a number of people were stranded and about to suffer imminent death from the fire, it could hardly be questioned that the fire inside the multi-story building would have priority over a fire in a dwelling where only property damage would be suffered.
"We opine that in this case a duty was imposed on the Tuscumbia Fire Department to respond immediately to the call that the Williams house was on fire. There was a special duty created to act in a skillful manner to respond to the call. We recognize the fact that firemen may act with extreme skillfulness and yet be unable to get to a fire to prevent a building from burning to the ground. But, here the complaint alleges that the reason the fire department did not immediately respond was that the driver of the truck had gone home sick and had not been replaced. We opine that the fire department acted unskillfully by not having a back-up driver who could have immediately taken the place of the sick driver, § 11-47-190, Code 1975. In other words, the fire department lacked proficiency. Cf. City of Birmingham v. Thompson, 404 So.2d 589 (Ala.1981).
"Finally, Tuscumbia contends that the abrogation of immunity by Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), did not relieve the courts from further examination of the issue of liability. No one can argue with that contention. Before Jackson the liability question was never presented for decision (except in a proprietary action), because the municipality was shielded by the doctrine of immunity. The municipality's immunity having been abrogated by § 11-47-190 as interpreted by Jackson, the liability question is precisely the question in this case.
"We hold that the complaint stated a cause of action. The cause is returned to the trial court to determine whether the failure of the fire department to immediately respond to the call that there was a fire at the Williams residence was the proximate cause of the house being destroyed." *1279 426 So.2d at 825-26. Chief Justice Torbert, in a dissent, joined by Justice Maddox, stated:
"I write to express my view that the same public policy considerations that the Court found applicable in Rich v. City of Mobile, 410 So.2d 385 (Ala.1982), are even more compelling in the present case. It is my opinion that this is indeed one of those
"`narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.'
410 So.2d at 387. The fact that a municipality is under no obligation to provide a fire department in order to protect the property of its residents tends to increase the probability that the imposition of tort liability would diminish a City's motivation or ability to support this essential service."
426 So.2d at 826.
Thereafter in City of Mobile v. Jackson, 474 So.2d 644 (Ala.1985), the Court affirmed a judgment based on a jury verdict in favor of the plaintiffs, the Jacksons, in a suit they brought against the City of Mobile seeking to recover for damages caused by the overflow of a drainage system that resulted in the flooding of their residence. The Court rejected the city's argument that it was substantively immune from liability:
"Next, the city cites Rich v. City of Mobile, 410 So.2d 385 (Ala.1982), to support its proposition that it is substantively immune from suit in this case. In Rich, homeowners sued the city, alleging that a building inspector negligently inspected, or negligently failed to inspect, sewer lines connecting plaintiffs' residence to the main system. Rich created a narrow exception to the rule of general liability for municipalities in situations in which the public policy considerations of a city's paramount responsibility to provide for the public safety, health, and general welfare outweighed the reasons for the imposition of liability on the municipality. This exception to the general rule of liability, however, is to be applied only in `those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.' Rich, 410 So.2d at 387.
"We find that Rich is not applicable to the case at hand.
"In Kennedy v. City of Montgomery, 423 So.2d 187 (Ala.1982), this Court held that pursuant to Code 1975, § 11-50-50, municipalities are authorized to construct and maintain drainage systems, and, while a municipality is not required to exercise this authority, once it does so, a duty of care arises and a municipality may be liable for damages proximately caused by its negligence.
"We find that the liability for negligent design or maintenance of drainage systems is analogous to that involved in the construction and maintenance of streets, alleys, or public ways or buildings, and, thus, that the city is not immune in this case."
474 So.2d at 649.
Shortly thereafter, in Calogrides v. City of Mobile, 475 So.2d 560 (Ala.1985), the Court affirmed a summary judgment granted in favor of the defendant City of Mobile. In Calogrides the plaintiff attended a fireworks display at Ladd Memorial Stadium that was sponsored in part by the city. After the plaintiff arrived and as he was walking up the stadium ramp to find a seat, he was assaulted by a group of five or six teenage males. Eighty-two police officers were assigned to the stadium for the fireworks display. The plaintiff filed suit against the city, alleging that it negligently or wantonly failed to provide him with adequate police protection. Applying the doctrine of substantive immunity, the Court held that municipalities are not liable for their failure to provide police protection. In pertinent part, the Court stated:
"In Rich v. City of Mobile, 410 So.2d 385, 387 (Ala.1982), the Court held that public policy considerations prevent the imposition of a duty on a city, the breach *1280 of which would impose tort liability to a person `in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.' The opinion acknowledged the lack of clarity of the rule there expressed, reserving for a later day the development of the rule, characterized as the substantive immunity rule. Whatever its perimeters, the rule recognizes that a city's obligation to provide for the public health, safety, and general welfare of its citizens is paramount and that the imposition of liability to particular individuals in certain circumstances would necessarily threaten the benefits of certain services to the public at large. We hold that this is such a case.

"Other jurisdictions have held that a municipality is not liable for this failure to provide police protection. See: Wuethrich v. Delia, 155 N.J.Super. 324, 326, 382 A.2d 929, 930 (1978), holding that `a public entity such as a municipality is not liable in tort for its failure to protect against the criminal propensity of third persons'; Motyka v. City of Amsterdam, 15 N.Y.2d 134, 138, 256 N.Y.S. 2d 595, 596, 204 N.E.2d 635, 636 (1965), stating, `The rule is that, independent of sovereign immunity, a municipality is not liable for failure to supply general police... protection [to the public].' See also 18 McQuillin, The Law of Municipal Corporations § 53.51 (3d ed. 1984), stating. `[T]he failure to provide, or the inadequacy of, police protection usually does not give rise to a cause of action in tort against a city.'" (Emphasis added.)
475 So.2d at 561.
See also Garrett v. City of Mobile, 481 So.2d 376 (Ala.1985) (companion case, following Calogrides, supra).
Clearly, the same public policy considerations that the Court found applicable in Rich, supra, Calogrides, supra, and Garrett, supra, are equally compelling in the present case. As Chief Justice Torbert noted in his dissent in Williams, fire protection is certainly one of those "narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart [a city's] legitimate efforts to provide such public services." 426 So.2d at 826. Indeed, the evidence is undisputed in this case that the imposition of liability would threaten the defendant's efforts to provide adequate fire protection to all of its citizens.
Therefore, I would hold that the defendant is not liable for negligence in failing to provide fire protection. To the extent that Williams v. City of Tuscumbia, supra, is contrary, I would expressly overrule it. I can see no genuine issues of material fact; therefore, I think the decision of the trial court should be affirmed. Rule 56, Ala.R. Civ.P.
TORBERT, C.J., and MADDOX and STEAGALL, JJ., concur.
NOTES
[1] Although the plaintiff alleged in her complaint that the defendant acted wantonly in failing to provide fire protection, there is no evidence in the record supporting that allegation.